UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| DAVID PAUL TIMMONS,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN ALEJANDRO REYES, AND MARTY JACKLEY, ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA,<br><br>Respondents. | 3:24-CV-03017-RAL<br><br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING JUDGMENT ON THE PLEADINGS |

A South Dakota jury found Petitioner David Paul Timmons guilty of domestic aggravated assault by strangulation. The state trial court sentenced Timmons to 15 years' imprisonment with three of those being suspended on conditions. The Supreme Court of South Dakota affirmed his conviction on direct appeal. State v. Timmons, 974 N.W.2d 881 (S.D. 2022). Timmons filed a state habeas petition, but the Supreme Court of South Dakota never reviewed it because Timmons did not timely file his motion for a probable cause certificate. Timmons petitioned for a Writ of Habeas Corpus under 28 U.S.C. § 2254 in this Court, seeking to vacate his conviction and have his case remanded for a new trial. Doc. 1. Respondents, South Dakota Attorney General Marty Jackley and Warden Alejandro Reyes, moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Doc. 11. Magistrate Judge Mark A. Moreno issued a Report and Recommendation that Respondents' Motion for Judgment on the Pleadings be granted. Doc. 18. Timmons has now objected to the Report and Recommendation. Docs. 24, 26. Having reviewed

1

the record de novo in light of Timmons's objections, this Court adopts the Report and Recommendation, Doc. 18, and grants Respondents' Motion for Judgment on the Pleadings, Doc. 11.

## I.    Facts

The facts from Timmons's trial are laid out more fully in <u>Timmons</u>, 974 N.W.2d 881. In short, Timmons and K.C. were in a relationship resulting in K.C. becoming pregnant and were living together. <u>Timmons</u>, 974 N.W.2d at 884; CR at 783, 945–46, 954.[1] On April 9, 2020, K.C. was at Timmons's residence on her phone watching television in the living room while Timmons was sleeping. <u>Timmons</u>, 974 N.W.2d at 884; CR at 764, 946. Timmons awakened and became upset about the television being too loud and began arguing with K.C. <u>Timmons</u>, 974 N.W.2d at 884; CR at 764–65, 946–47. The argument escalated, an altercation ensued, and Timmons took K.C. to the floor on her stomach. <u>Timmons</u>, 974 N.W.2d at 884; CR at 947–49. K.C. testified that while on the floor, Timmons restrained her by putting his arm around her neck causing her to feel like she could not breathe and was going to pass out. <u>Timmons</u>, 974 N.W.2d at 884; CR at 949–50.

K.C. called 911 one hour after the incident. <u>Timmons</u>, 974 N.W.2d at 884; CR at 309. Officers observed that K.C. was shaken up both on the phone and when they arrived. <u>Timmons</u>, 974 N.W.2d at 884; CR at 744, 752. K.C. told Officer Jonathan Brill, a reporting officer, "that Timmons hit her face on the floor, held her down with her arms behind her back, and pulled her hair." <u>Timmons</u>, 974 N.W.2d at 884–85; CR at 949. K.C. described to Officer Brill that she felt

---

[1] Judge Moreno took judicial notice of the state court records in Timmons's criminal and habeas cases, and this Court does as well. This Court cites the records from Timmons's criminal record as "CR," the records from his direct appeal as "AR," the records from his habeas case as "HR," and the record from his habeas appeal as "HAR."

like she could not breathe while Timmons had his arm around her neck and then told an emergency medical services responder that Timmons strangled her. Timmons, 974 N.W.2d at 885; CR at 328, 792–93.

Timmons told Officer Brill that K.C. had started the altercation and tried to bite his thumb off. Timmons, 974 N.W.2d at 885; CR at 764–65. Timmons contended that K.C. sustained her injuries from rough sex the night before. Timmons, 974 N.W.2d at 885; CR at 765. Timmons said that K.C. would ask to be choked and have her hair pulled during their sexual encounters. Timmons, 974 N.W.2d at 885; CR at 765–66, 789.

Timmons was arrested and indicted for domestic aggravated assault. Timmons, 974 N.W.2d at 885; CR at 9, 769. A two-day jury trial began on March 11, 2021. Timmons, 974 N.W.2d at 885. The State introduced the statements made to Officer Brill by K.C. and Timmons, the recording of K.C.'s 911 call, and photographs of their injuries. Timmons, 974 N.W.2d at 885; CR at 309–58, 743–95. K.C. testified at trial that Timmons had "choked her while she was pinned to the floor and that she was frightened during the altercation." Timmons, 974 N.W.2d at 885; CR at 949–50. K.C. told the jury that she felt like she could not breath and was going to pass out "a little bit." Timmons, 974 N.W.2d at 885; CR at 950. K.C. admitted that she could have caused bruising on Timmons by trying to push him away and that there was a "mutual physical confrontation." Timmons, 974 N.W.2d at 885; CR at 948–49, 972. The prosecutor introduced photographs of and presented testimony from a nurse who charted an observation of bruising around K.C.'s neck after the incident. Timmons, 974 N.W.2d at 885; CR at 312–16, 931–35.

At the close of the State's case, Timmons moved for a judgment of acquittal. Timmons, 974 N.W.2d at 886; CR at 1010–11. He argued that there was insufficient evidence to establish that he intended to strangle K.C. or place her in fear of death or imminent bodily harm but was

3

only trying to restrain her. Timmons, 974 N.W.2d at 886; CR at 1010–11. The court denied the motion concluding that there was evidence from which the jury could find Timmons guilty beyond a reasonable doubt. Timmons, 974 N.W.2d at 886; CR at 1012–13. The jury found Timmons guilty of domestic aggravated assault. Timmons, 974 N.W.2d at 886; CR at 1054.

Timmons admitted to a part II information, which alleged he previously had been convicted of attempted fourth-degree rape. Timmons, 974 N.W.2d at 885–86; CR at 1062–63. This admission enhanced Timmons's potential maximum punishment to the level of a class 2 felony under South Dakota law. Timmons, 974 N.W.2d at 886; CR at 1059. The state trial court ordered a presentence investigation report. Timmons, 974 N.W.2d at 886; CR at 1065. K.C. submitted a letter of support for Timmons in which she stated that she felt like she was lied to, manipulated, and threatened by the prosecutor to testify against Timmons. Timmons, 974 N.W.2d at 886; Doc. 24-2 at 1. K.C. in the letter wrote that she was coming down from methamphetamine use at the time of the altercation and did not want to call the cops. Timmons, 974 N.W.2d at 886; Doc. 24-2 at 1. K.C. wrote that Timmons did not deserve a heavy sentence and that Timmons's intentions were not to hurt her. Timmons, 974 N.W.2d at 886; Doc. 24-2 at 1. On April 26, 2021, Timmons received fifteen years' imprisonment with three years suspended. Timmons, 974 N.W.2d at 886; CR at 1046–47.

Timmons filed a motion for a new trial asserting that K.C.'s letter constituted newly discovered evidence and a surprise. Timmons, 974 N.W.2d at 886. The trial court denied the motion reasoning that Timmons could have discovered the information in the letter before trial based upon his extensive pretrial contact with K.C. Id. The court also added that the information in the letter could only be used to impeach K.C. and was cumulative of what was used to impeach her. Id.

4

Timmons appealed his conviction to the Supreme Court of South Dakota asserting that the trial court erred in denying his motion for judgment of acquittal and that the trial court abused its discretion in denying his motion for a new trial. Timmons, 974 N.W.2d at 886; AR at 7. The Supreme Court of South Dakota upheld his conviction affirming the trial court's denial of his motion for judgment of acquittal and finding no abuse of discretion in denying his motion for a new trial. Timmons, 974 N.W.2d at 887, 889–90.

Timmons filed a habeas petition in state court. HR at 4–41. Timmons raised a total of twenty-two grounds for relief, all of which he repeats in his federal petition before this Court. Docs. 1, 2; HR at 5–37. After dismissal of the petition at the trial court level, HR at 183, Timmons filed a motion for certificate of probable cause to the Supreme Court of South Dakota but was one day late of his deadline. HAR at 1–17, 25. The Supreme Court of South Dakota entered an order requiring Timmons to show cause for his untimeliness. HAR at 25. Timmons blamed the delay on his Unit Manager not timely delivering mail to him and sending his mail out. HAR at 40. The Supreme Court of South Dakota considered Timmons's contention but ultimately dismissed the motion "on the grounds that it was not timely taken." HAR at 56.

Timmons then filed his 28 U.S.C. § 2254 petition in this Court alleging that there was insufficient trial evidence (Ground I); that the denial of his motion for a new trial violated his due process rights (Ground II); and that his attorney was ineffective in multiple ways (Ground III). Doc. 1; Doc. 2 at 1.

## II.    Legal Standard

This Court reviews a report and recommendation under the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murrillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). This Court has conducted a de novo review of the record and Timmons's objections.

## III.    Analysis

### A. AEDPA Standard

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) makes succeeding on a federal habeas petition difficult, even when prisoners follow all state procedural rules and properly exhaust their claims in state court. Section 2254(d) bars federal courts from granting relief on any claim "that was adjudicated on the merits in State court" unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). This "difficult to meet and highly deferential standard for evaluating state-court rulings" requires "that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (cleaned up and citations omitted).

A state court decision is contrary to federal law under AEDPA "if it (1) contradicts a rule set forth in the Supreme Court's cases or (2) confronts a set of materially indistinguishable facts and arrives at a different result." Dansby v. Payne, 47 F.4th 647, 655 (8th Cir. 2022) (cleaned up and citation omitted). And a "decision unreasonably applies federal law if the state court correctly

6

identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context." Id. at 656 (cleaned up and citation omitted). Prisoners claiming an unreasonable application of federal law "must show that a state court's adjudication was not only wrong, but also objectively unreasonable, such that fairminded jurists could not disagree about the proper resolution." Id. (citation omitted). This Court evaluates "the reasonableness of the state court's ultimate conclusion, not necessarily the reasoning used to justify the decision." Zornes v. Bolin, 37 F.4th 1411, 1415 (8th Cir. 2022); see also Springs v. Payne, 95 F.4th 596, 600–01 (8th Cir. 2024) (citing Zornes and Wilson v. Sellers, 584 U.S. 122 (2018)). AEDPA also demands that a state court's factual determinations "shall be presumed to be correct," and gives the petitioner the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### B. Ground I: Insufficient Trial Evidence

Ground I of Timmons's petition alleges that the trial judge violated his due process rights by denying his motion for judgment of acquittal based on insufficient evidence. Doc. 1 at 6. Timmons challenged the denial of his motion for judgment of acquittal on direct appeal. Timmons, 974 N.W.2d at 886. The Supreme Court of South Dakota affirmed the conviction, holding there was sufficient evidence for the jury to find him guilty beyond a reasonable doubt. Id. at 887–88. Timmons argued in his state habeas petition that the trial judge's denial of his motion for judgment of acquittal was erroneous based on his interpretation of the facts—much like he does here. HR at 5–10.

Since Timmons appealed his conviction to the Supreme Court of South Dakota and raised this issue on appeal, Timmons has exhausted his state court remedies and not procedurally

7

defaulted on this claim. See Timmons, 974 N.W.2d at 886. Since this claim was adjudicated on the merits in state court, however, Timmons must show the state court's decision renders him "in custody in violation of the Constitution or laws or treaties of the United States" under AEDPA's deferential standard of review. 28 U.S.C. § 2254(a). To do so Timmons must meet the high standard set in Jackson v. Virginia for insufficient evidence supporting his conviction to be an error of constitutional dimension. 443 U.S. 307 (1979). "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." Id. at 319. The Supreme Court has emphasized how difficult it is to succeed on a sufficiency-of-the-evidence-claim in a § 2254 proceeding:

> We have made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam) (cleaned up and citations omitted).

Judge Moreno found reasonable the Supreme Court of South Dakota's decision affirming the trial court's denial of judgment of acquittal. Doc. 18 at 6. Timmons objects to Judge Moreno's finding that K.C. "feeling" like she could not breathe was sufficient alone to support a finding that Timmons choked her. Doc. 24 at 4. Timmons further objects to Judge Moreno's interpretation of supporting facts arguing that they do not support his conviction because K.C. only stated that she "felt" like she could not breathe, not that she could not breathe. Id. at 4–5.

8

Timmons's objections are overruled. There was enough evidence to support the jury's verdict based on K.C.'s testimony, Officer Brill's testimony, and the photographs of and testimony about K.C.'s injuries. Timmons's argument overlooks much of the evidence against him. K.C. testified that Timmons became angry at her because she had the TV too loud and was always on her phone. CR at 946–47. She described that he grabbed her phone, she took it back and tried to walk away, but Timmons seized her arm. Id. at 947–49. K.C. recounted that the confrontation escalated, Timmons pulled K.C. to the floor, got her on her stomach and hit her face on the floor. Id. at 317–19, 947–49. K.C. testified that Timmons attempted to restrain her by pulling her arms behind her back and then by wrapping his arm around her neck, making her unable to breathe such that she felt like she might pass out. Id. at 949–50. K.C. called 911 within an hour and her injuries, depicted in photographs, included a cut to her lower lip, scratches to her neck and bruises on her legs, neck and arms. Id. at 309–16. A nurse later observed those same injuries. Id. at 931–35. Timmons's own statements confirmed that they had caused each other's injuries, although he attributed her injuries to rough sex and his injuries to K.C. attacking him. Id. at 765. Timmons has failed to show the Supreme Court of South Dakota's decision affirming the trial court was "objectively unreasonable," or that there was constitutionally insufficient evidence to support his conviction.

## C. Ground II: Denial of Motion for New Trial

Timmons next disputes the trial court's denial of his motion for a new trial based on the post-verdict letter K.C. provided seeking leniency at Timmons's sentencing hearing. Doc. 1 at 8. Timmons raises three arguments: (1) the letter reveals for the first time that K.C. was high on methamphetamine, which if known, would have "shattered" her credibility; (2) her admission to being on drugs shows motive for lying to the police and bolsters his self-defense claim; and (3)

9

the judge failed to do the necessary probing on K.C.'s claim of prosecutorial intimidation. Doc. 2 at 13–15. Timmons raised this argument on direct appeal to the Supreme Court of South Dakota. Timmons, 974 N.W.2d at 888. The Supreme Court of South Dakota affirmed his conviction holding that the trial court did not abuse its discretion in denying Timmons's motion for a new trial. Timmons, 974 N.W.2d at 889–90. Timmons then asserted this claim in his state habeas petition. HR at 10–13.

Since Timmons properly raised this issue on direct appeal to the Supreme Court of South Dakota, Timmons has exhausted his state court remedies on this claim. Timmons has not procedurally defaulted this claim. However, to the extent that Timmons argues that the trial court misapplied state law in not granting his motion for a new trial, there is nothing this Court can do. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). State law governed the ruling on the motion for a new trial here and the propriety of that ruling is thus outside the scope of federal habeas review.

Judge Moreno, liberally construing the petition, deemed Timmons to be asserting a denial of his constitutional right to present a full defense because of the discovery of new evidence. Doc. 18 at 7–8. "[A] 'claim of newly discovered evidence relevant to the guilt of a state prisoner is generally not a ground for relief on federal habeas corpus[.]'" Cornell v. Nix, 921 F.2d 769, 771 (8th Cir. 1990) (quoting Mastrian v. McManus, 554 F.2d 813, 822 (8th Cir. 1977)). A petitioner to be afforded relief must show "that the [newly discovered] evidence would probably produce an acquittal on retrial." Cornell, 921 F.2d at 771 (alteration in original) (quoting Dumond v. Lockhart, 885 F.2d 419, 421 (8th Cir. 1989)). Judge Moreno found that Timmons could not show that the

"evidence would probably produce an acquittal on retrial." Doc. 18 at 8. Judge Moreno reasoned that the evidence was not new to Timmons, and that there was other evidence at trial that presented K.C.'s motive to lie and alleged prosecutorial intimidation. Doc. 18 at 7–8.

Timmons objects for various reasons. First, he objects to Judge Moreno's "speculation that Timmons cannot show the 'evidence would probably produce an acquittal on retrial' to get Habeas relief." Doc. 24 at 5 (citing Doc. 18 at 7–8). Timmons next objects that he knew K.C. was high at the time of the altercation, by stating that he only believed her to be, not that he actually knew. Id. at 6. Timmons then objects that Judge Moreno understated the impact of drug use, asserting that K.C.'s drug use would have discredited her testimony and provided an additional theory to support his defense. Id. at 6–7. Timmons also objects to Judge Moreno's finding that Timmons could have found out about the prosecutorial intimidation during "his several rendezvous with K.C. despite a no-contact order." Id. at 7. Finally, Timmons objects to the finding that defense counsel "suggested that prosecution used K.C. to manufacture a crime." Id. at 7–8 (citing Doc. 18 at 9–10).

Timmons's objections are overruled. First, Timmons admitted that he believed K.C. was high on methamphetamine due to her past use and informed counsel of this fact. Doc. 2 at 21. Regardless of whether he actually knew she was high on methamphetamine that morning, he was aware of her drug use and informed counsel of it. Timmons had the ability to investigate this matter and present evidence at his trial based on his awareness of drug use. This information was not new. Further, K.C.'s motive to lie was explored through other evidence showing that external influences were pressuring her to call the police and testify for the State. Plus, Timmons's counsel insinuated at trial that K.C. felt pressure from the prosecutor, including asking how many times K.C. met with the State leading up to trial and about the prosecutor's concern of how K.C. might

11

testify. Timmons's counsel elicited from K.C. at trial that she had met with the prosecutor five or six times about her testimony, that she regretted calling the police because she loves Timmons and they share a child together, and that she felt "kind of" manipulated by family and friends to testify against Timmons though she was telling the truth still. CR at 968–70, 974–75. Timmons overstates K.C.'s letter, written after the conviction, as some revelation of newly discovered evidence, but Timmons has not shown that anything in it would probably produce an acquittal on retrial. Therefore, this ground does not warrant habeas relief.

## D. Ground III: Ineffective Assistance of Counsel

Ground III of Timmons's petition alleges that his trial attorney was ineffective in twenty different ways. Doc. 1 at 9. These grounds include various failures to provide effective assistance of counsel in post-trial matters, investigate the case further, object to the admission of evidence, and provide additional evidence. Doc. 2 at 5–6.

Timmons presented these ineffective assistance of counsel claims in his state habeas petition. HR at 13–37. Timmons, however, failed to timely appeal his habeas petition to the Supreme Court of South Dakota, missing his filing deadline by one day. HAR 56. The Supreme Court of the United States has stated in regard to failing to follow state procedural rules:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991). Timmons's failure to timely appeal his petition to the Supreme Court of South Dakota, and its dismissal of his petition on an independent and adequate state procedural rule renders Timmons's ineffective assistance of counsel claims procedurally defaulted. Nevertheless, as Judge Moreno did, this Court will still consider each

claim of ineffective assistance of counsel on their merits to determine whether Timmons can show cause and prejudice.

A petitioner claiming ineffective assistance must show both that counsel's performance was constitutionally deficient and that he was prejudiced by this deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, Timmons must show that "counsel's representation fell below an objective standard of reasonableness" given "all the circumstances." Id. at 688. This standard is "highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Timmons has the burden of showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687.

To establish prejudice, Timmons must show a "reasonable probability" that, but for his attorneys' deficient performance, the outcome of his trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "That requires a substantial, not just conceivable, likelihood of a different result." Cullen, 563 U.S. at 189 (cleaned up and citation omitted). Petitioners must meet both Strickland prongs to succeed on an ineffectiveness claim, and courts can begin (and perhaps end) with either prong. Williams v. Norris, 576 F.3d 850, 858 (8th Cir. 2009). Federal habeas courts reviewing a state court's application of Strickland must take "a highly deferential look at counsel's performance" under Strickland "through the deferential lens of § 2254(d)." Cullen, 563 U.S. at 190 (cleaned up and citation omitted).

13

### 1. Failure to Raise Issues in Post-Trial Motions

Timmons lists numerous issues counsel should have raised during post-trial motions. Doc. 2 at 17–18. Judge Moreno found none of these issues to be incompetently omitted by counsel or unreasonably rejected by the state habeas court. Doc. 18 at 11. Judge Moreno, therefore, concluded that this subsidiary ground of ineffective assistance of counsel claim did not plausibly allege grounds for habeas relief. Id. at 12.

Timmons objects in two ways. First, Timmons objects to Judge Moreno's finding that "[n]one of these issues are ones that counsel incompetently omitted or that the state habeas court unreasonably rejected." Doc. 26 at 8. Timmons argues his counsel's performance was deficient because "no competent lawyer could have overlooked all of them." Id. Timmons similarly objects to Judge Moreno's finding that "the state court's rejection of these points was reasonable" and that none alleged grounds for habeas relief. Id.

Timmons's objections are overruled. Timmons's objections do not overcome the deferential standard of Strickland and the AEDPA. This Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, and give the state court "the benefit of the doubt," Cullen, 563 U.S. at 181 (citation omitted). Timmons cannot show prejudice because the issues Timmons asserts his counsel did not raise were developed in the testimony at trial. For example, Timmons argues that his attorney failed to raise the history of no violence between K.C. and Timmons to the trial judge. K.C. testified at trial that this was the first physical altercation between her and Timmons. CR at 639. The trial judge knew this evidence when ruling on the motions. Similarly, the trial judge heard evidence on the issues Timmons asserts his counsel failed to raise on his motion for a new

trial. Timmons cannot show prejudice nor that the state habeas court's dismissal was objectively unreasonable.

### 2. Glossy Photos

Timmons's next ineffective assistance argument is that his attorney failed to introduce into evidence glossy photos like those used by the State. Doc. 2 at 18. Timmons argued in his state habeas petition that the State's glossy photos were unduly suggestive, raising the State's narrative above his own, because K.C.'s bruises were shown on higher quality photo paper, as opposed to his bruises which were shown on standard print paper. HR at 14. The state habeas court dismissed this contention. Id. at 111, 113. Judge Moreno likewise rejected these arguments stating that "[j]urors are not moths, irresistibly drawn to the flashiest pictures and incapable of overcoming their appeal." Doc. 18 at 13.

Timmons objects to Judge Moreno's analysis that the State's narrative was not elevated above his own. Doc. 26 at 9–10. Timmons argues that the State was much more effective in their presentation of evidence by having numerous pictures from different angles, with better lighting, and taken at different intervals making his defense counsel ineffective. Id. at 9. Timmons argues that the jury was unable to evaluate the evidence because they could not see the minor details of his injuries that glossy photo paper would have provided. Id. Timmons asserts that counsel's failure to "spend a few extra dollars" on the photo paper was ineffective. Id. at 10.

Timmons's objection is overruled. Timmons cannot show prejudice under the Strickland standard, nor how his attorney's actions fell outside the "wide range of reasonable professional assistance." 466 U.S. at 689. An attorney is not required to always provide the highest quality and eye-catching photos. Timmons's counsel was well within the wide range of reasonable professional assistance by introducing photos even though they were not printed on glossy photo

15

paper. Timmons cannot show prejudice because it is unlikely that the pictures on glossy photo paper would have produced a different result because the jury was able to see Timmons's injuries on the non-glossy photos introduced. Timmons has not shown that his counsel was deficient, that he was prejudiced, or that the state habeas court's decision was objectively unreasonable.

### 3. Medical Expert

Timmons contends that his attorney's failure to hire a medical expert constitutes ineffective assistance of counsel. Doc. 2 at 18–19. Timmons argued in his state habeas petition that a medical expert could have provided alternate theories on why K.C. felt like she could not breathe. HR at 15. The state habeas court was not persuaded. Id. at 111, 113. Judge Moreno found this argument to be too speculative and the choice not to hire such an expert to be well within the deference due to strategic decisions. Doc. 18 at 13–14.

Timmons objects to Judge Moreno's finding that "counsel was within his authority to weigh the use of a medical expert and recognize the little good it would do" and that what the medical expert may have testified to was purely speculative. Doc. 26 at 10 (citing Doc. 18 at 13–14). Timmons argues that the alternate theories may have been presented if counsel had hired a medical expert. Id. Timmons posits that counsel's failure to call any witness on his behalf amounts to ineffective assistance of counsel. Id. at 10–11.

Timmons's objection is overruled. As the Eighth Circuit has emphasized: "An attorney is not incompetent in exercising reasonable professional judgment even when, in hindsight, the decision may have been a mistake." Thomas v. United States, 737 F.3d 1202, 1207 (8th Cir. 2013) (citing Brown v. United States, 656 F.2d 361, 363 (8th Cir. 1981)). "The attorney . . . has the responsibility of making tactical decisions of trial strategy." Id. (citing Strickland, 466 U.S. at 689). This responsibility includes whether to call a certain witness. Timmons's counsel was

within the "wide range of reasonable professional assistance" in deciding to not seek out a medical expert to testify. Strickland, 466 U.S. at 689. Indeed, Timmons's entire argument is based on a supposition unsupported in the record that some medical professional would give useful testimony to explain that K.C.'s difficulty breathing was not related to the cause she identified—Timmons choking off her air supply. Timmons has failed to show the state habeas court's decision was objectively unreasonable.

### 4.  Failure to Inquire into K.C.'s Meetings with the State

Timmons petitions that counsel's failure to delve further into why the prosecution met with K.C. numerous times leading up to trial amounts to ineffective assistance of counsel. Doc. 2 at 19–20. Timmons alleged in his state habeas petition that further inquiry would have shattered K.C.'s credibility and shown the State had a weak case against him. HR at 15–16. The state habeas court rejected this argument. Id. at 111, 113. Judge Moreno similarly observed that K.C. could not speculate about why the prosecution was concerned how she would testify, the cross-examination by Timmons's trial counsel showed that K.C. met with the prosecution numerous times with the State being concerned how she would testify, and the jury was able to connect those dots without counsel explicitly stating the prosecution coerced K.C. Doc. 18 at 15–16.

Timmons objects in three ways. First, Timmons objects to Judge Moreno's finding that counsel could not have inquired into why K.C. thought the prosecution was concerned about her testimony because that would require her to speculate. Doc. 26 at 11. Second, Timmons objects to the finding that the jury believed K.C. despite knowing that she met with the prosecution multiple times leading into trial. Id. Timmons argues that K.C. was not able to testify how she wanted to at trial due to prosecutorial intimidation. Id. Third, Timmons objects that K.C. did not contradict the prosecution because she was not asked what the prosecutor said. Id. at 12. He

argues that Judge Moreno is speculating that K.C. would not have changed her story if asked directly. Id.

Timmons's objections are overruled. Even if Timmons's counsel would have inquired into why K.C. thought the prosecution was concerned about her testimony, this line of inquiry likely would have drawn a well-founded objection as calling for speculation. It is Timmons who is speculating on how K.C. may have testified if asked directly what the prosecution told her in the days leading up to trial. Timmons's counsel on cross-examination fleshed out that K.C. met with the prosecution multiple times leading into trial and that her story was not always consistent. Timmons has not shown how his counsel's cross examination was not "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Timmons fails to show how the state habeas court's dismissal of this ground was objectively unreasonable.

### 5. Methamphetamine and Medication

Timmons asserts that his counsel's failure to inquire into K.C.'s methamphetamine use and whether she was on her prescribed medication the morning of the altercation constitutes ineffective assistance of counsel. Doc. 2 at 20–23. Timmons argued in his state habeas petition that had the jury been privy to this information, his reason that she attacked him first would have been more plausible. HR at 16–18. Both the state habeas court and Judge Moreno rejected these arguments. Id. at 111, 113; Doc. 18 at 16–20. Judge Moreno reasoned that this claim could not overcome the barriers to make a viable ineffective assistance of counsel claim because this decision was within counsel's trial strategy; counsel was unable to prove K.C.'s methamphetamine use during trial; counsel did elicit from Officer Brill that he believed K.C. was not on any drug although he was not a drug recognition expert; and counsel did inquire into K.C.'s use of her prescribed medication.

Doc. 18 at 16–20. Judge Moreno concluded that "Timmons has not generated the necessary doubt in his conviction to merit habeas relief on the issue." Id. at 20.

Timmons objects in numerous ways. First, Timmons objects to Judge Moreno's finding that Timmons did not offer exceptional circumstances to require a deposition. Doc. 26 at 12–13. Timmons argues K.C.'s past methamphetamine use and K.C. telling a private investigator that she was the one who attacked Timmons constitutes exceptional circumstances requiring a deposition. Id. Timmons objects to Judge Moreno's finding that counsel's failure to inquire further into drug use was trial strategy and argues that it was counsel's lack of preparedness instead. Id. at 13. Timmons then reasserts his same arguments for the denial of a new trial, which this Court has already addressed above in Ground II. Timmons objects to Judge Moreno's finding that the jury could have found that K.C. was not on her prescribed medication and thus prone to mood swings. Id. at 17. Timmons argues that mood swings from prescribed medication and coming down from methamphetamine are not comparable. Id. Further, the combination of K.C. not taking her medications, coming down from methamphetamine, and being pregnant all led to her attacking him. Id. at 17–18. Lastly, Timmons objects to Judge Moreno's conclusion that Timmons has not met his burden to warrant habeas relief. Id. at 18.

Timmons's objections are overruled. South Dakota Codified Law chapter 23A-12 discusses the procedures for depositions in criminal cases, which provides that "depositions are to be taken in 'exceptional circumstances' for purposes of preserving testimony for use at trial." Warfield v. Weber, No. 07-5026, 2009 WL 234386, at *11 (D.S.D. Jan. 29, 2009) (citing S.D.C.L. § 23A-12-1). Timmons has not shown how his counsel's assistance falls outside the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Rather, Timmons continues to reassert the same factual allegations that the jury, the Supreme Court of South Dakota,

19

and the state habeas court all found unavailing. Timmons has not demonstrated how the state court's decision was objectively unreasonable by reasserting his interpretation of the facts.

### 6. Investigating Officer

Timmons argues that his counsel's performance was ineffective in handling Officer Brill's testimony at trial. Timmons asserts that counsel should have objected to the admission of the edited body camera footage; inquired into Officer Brill's domestic abuse training, medical training, and education; queried whether Officer Brill asked K.C. about other causes for her headache and bruising; pursued a hypothetical line of questioning during cross-examination of Officer Brill; and pointed out Officer Brill's inconsistent statements and bias toward Timmons. Doc. 2 at 23–29. Judge Moreno found none of these arguments availing. Doc. 18 at 20. Judge Moreno determined that most of the alleged "failures" fell within counsel's authority over trial strategy and that there was plenty of other evidence to support the conviction even if counsel would have done everything Timmons now claims he should have done. Id. at 20–23.

Timmons objects. Timmons argues that if the full body camera footage was played, the jury would not have believed that he choked K.C. Doc. 26 at 19. Timmons further argues that Officer Brill's lack of domestic abuse training was critical for the jury to know to assess credibility. Id. at 20. Timmons lastly argues that his counsel's joke to build rapport discredited everything counsel said after that and "was so irresponsible it amounted to Timmons not even having an attorney." Id. at 21.

Timmons's objections are overruled. Timmons's trial counsel was exercising his decision-making authority as part of his trial strategy "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see also Thomas, 737 F.3d at 1207 (citing Strickland, 466 U.S. at 689). Officer Brill's domestic abuse training, or lack thereof, was a collateral matter and

had an inconsequential effect on the trial. Further, counsel's quick-witted joke in response to Officer Brill's answer likely built rapport and likability with jury and did not discredit everything counsel said after that. Even so, Timmons cannot show that counsel's failure to inquire into these various topics would have changed the result of his trial. Therefore, Timmons cannot show that the state habeas court's dismissal was objectively unreasonable.

### 7. Failure to Subpoena Disciplinary Report

Timmons contends that his attorney's failure to request Brady and Giglio material constitutes ineffective assistance of counsel. Doc. 2 at 29–30. Judge Moreno rejected this argument as "if the state had such materials, it needed to produce them regardless of whether a request has been made." Doc. 18 at 23. Timmons does not object to that specific statement but maintains that the prosecution failed to disclose one of the body camera recordings. Doc. 26 at 21–22. Since Timmons's counsel was not required to request the documents and cannot be considered deficient in this regard, Timmons's objection is overruled.

### 8. Failure to Object to State's Leading K.C. as a Witness

Timmons asserts that the prosecution re-asking K.C. questions in a different way constituted leading the witness to manufacture her testimony, which his counsel should have objected to. Doc. 2 at 30. Timmons argues that K.C. was being coerced and the rewording of questions is how the State manufactured her testimony. Id. Judge Moreno rejected this argument reasoning that the jury is not blind to social cues and that the questions were permissible by the State. Doc. 18 at 24. Timmons's objection is merely a recitation of his original petition arguing that K.C. could not testify how she wanted. Doc. 26 at 22. Timmons's objection is overruled. Timmons has not provided any basis to find that his counsel's conduct was deficient in not objecting more or that the state habeas court's determination was objectively unreasonable.

### 9. Failure to Object to State's Recess During Direct Examination of K.C.

Timmons's only objection here is purely speculative. Timmons objects that the recess during K.C.'s direct examination allowed the prosecution to "coach" K.C. over the recess. Doc. 26 at 22. There is nothing in the record that indicates K.C. was coached on her testimony during the recess, and this supposition does not render his counsel's performance to be deficient. Therefore, Timmons's objection is overruled.

### 10. Failure to Object to Inflammatory Comments Made during State's Closing

Timmons asserts that the prosecutor made inflammatory comments during closing arguments by interposing her opinions and misstating evidence. Doc. 2 at 32–35. He argues that counsel's failure to object during closing arguments amounts to ineffective assistance of counsel. Id. Judge Moreno found these arguments unavailing. Doc. 18 at 26. "To obtain a reversal for prosecutorial misconduct, a defendant must show both that the prosecutor's remarks were improper and that the remarks prejudiced his right to a fair trial." United States v. Patterson, 68 F.4th 402, 419 (8th Cir. 2023) (citing United States v. Bentley, 561 F.3d 803, 809 (8th Cir. 2009)). Judge Moreno found that none of Timmons's assertions "rise to that level." Doc. 18 at 26.

Timmons objects. First, Timmons objects to Judge Moreno's finding that the prosecutor's interjections of her personal opinion were slight and that they were not inappropriate to refer to and summarize the evidence of the case. Doc. 26 at 22–23. Timmons objects to Judge Moreno's conclusion that a jury could have found that Timmons both restrained and choked K.C. Id. at 23. Timmons also objects to Judge Moreno's determination that context shows the prosecution's statement was not used to appeal to the jury's emotion but rather to explain K.C.'s struggles in testifying and changing her story. Id. at 24.

22

Timmons's objections are overruled. Timmons's counsel did object to one of the interjections of personal opinion, which was sustained. Doc. 18 at 27. Timmons's counsel let another opportunity to object pass, as Judge Moreno recounted. Doc. 18 at 27–28. "Whether to object during opposing counsel's summation to the jury is a matter of trial strategy . . . ." Dansby v. Hobbs, 766 F.3d 809, 836 (8th Cir. 2014). Counsel was not required to object to every minor interjection of personal opinion. Timmons's assertion that if the jury found he restrained K.C., he could not have also choked her is objectively false; the two acts are not exclusive. Timmons's counsel's performance fell "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

### 11. Failure to Investigate K.C.'s History of Self-Harm and Attention Seeking

Timmons contends K.C. has a knack for distorting the truth to seek attention. Doc. 2 at 36. Timmons believes his counsel's failure to investigate this character trait amounts to ineffective assistance of counsel. Id. Judge Moreno found that Timmons's counsel's performance was reasonable, that counsel's determination not to investigate further was reasonable, and that counsel portrayed this to the jury by questioning K.C. about making others happy. Doc. 18 at 30–31.

Timmons objects. Timmons asserts that his counsel was required to investigate K.C.'s attention seeking behavior. Doc. 26 at 24. Timmons argues that the jury was somehow misled because it was only allowed to hear her version of what happened, which "blows everything out of proportion for attention." Id. at 24–25. Timmons also objects to Judge Moreno's finding that K.C.'s testimony regarding wanting to make others happy is equivalent to lying. Id. at 25.

Timmons's objections are overruled. Counsel is not required to make a complete investigation so long as "reasonable professional judgments support the limitations on [it]." Strickland, 466 U.S. at 691. Here, counsel's limitation was supported by reasonable professional

judgments as other avenues of investigation would be more fruitful. Counsel's performance was "within the wide range of reasonable professional assistance." Id. at 689. Timmons's other objections do not go toward how his counsel was deficient. Timmons has not shown the state court's determination was objectively unreasonable.

### 12. Denial of Petitioner's Right to Testify

Timmons contends that his counsel denied him the right to testify at trial, which amounted to ineffective assistance of counsel. Doc. 2 at 37. Judge Moreno noted the lack of a state court record to develop this issue. Doc. 18 at 32. Timmons had an absolute right to testify in his own defense. But Judge Moreno reasoned that Timmons could not show prejudice under the Strickland standard. Id. at 33. After all, Timmons's proposed testimony could have strengthened the State's case because he had admitted to putting "force[] against [K.C.'s] neck," and had given two incongruent stories—the bruises coming from "rough sex" or from when he tried to pull K.C. off of him. Id. at 33–34.

Timmons objects to Judge Moreno's supposed finding that Timmons never alleged coercion, Doc. 26 at 25, but that is not how Judge Moreno ruled. See Doc. 18 at 33. Judge Moreno concluded that Timmons could not show prejudice, not that he failed to show coercion. Id. at 33–34. Timmons further contends that he was not allowed to testify because his counsel and the prosecution made a deal, or that he was lied to by his counsel. Doc. 26 at 25. The notions of some deal or being lied to are not supported by any evidence. Timmons further objects to Judge Moreno's finding that Timmons cannot show prejudice. Id. at 26–27. Timmons is now asserting that K.C. never had any bruises from either "rough sex" or from the altercation to challenge Judge Moreno's finding that Timmons's proposed testimony would have been detrimental. Id. at 27. Timmons's changing stories—especially ones contradicted by testimony and photographs—do not

help his case. Timmons's proposed testimony was inconsistent and would have helped the State's case by acknowledging he may have forced himself against K.C.'s neck. Timmons cannot show prejudice nor that the state habeas court's decision was objectively unreasonable.

### 13. Failure to Provide Private Investigator as Witness at Trial

Timmons's counsel hired a private investigator to assist in Timmons's case; Timmons claims his counsel was ineffective for failing to call the private investigator as a witness at trial. Doc. 2 at 38. Timmons relies on Stouffer v. Reynolds, 214 F.3d 1231 (10th Cir. 2000) to make this argument. Judge Moreno distinguished that case by concluding that the investigator in Stouffer had "independent discoveries of crucial facts that only he could speak to[;]" Timmons's investigator's testimony, on the other hand, would have mirrored what K.C. testified to on cross-examination. Doc. 18 at 35.

Timmons objects to Judge Moreno's analysis of Stouffer arguing that the private investigator would have testified that K.C. attacked Timmons first. Doc. 26 at 27. Timmons's objection is overruled. First, Timmons's hypothesis as to what the private investigator would have testified to is speculative. Separately, Officer Brill testified that K.C. told him she bit Timmons's thumb. CR at 793–94. Timmons's counsel's decision to not call the private investigator was within his purview of trial strategy to which this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Timmons has not shown that the state habeas court's dismissal of his petition was objectively unreasonable.

### 14. Failure to Conduct Full Investigation and Discovery Request

Timmons contends that his counsel failed to request Brady and other materials and failed to interview K.C. Doc. 2 at 39–44. Judge Moreno agreed with the state habeas court that these

25

assertions did not entitle him to habeas relief. Doc. 18 at 35. Judge Moreno reasoned that the requests were not necessary based on the State's pretrial representations regarding disclosed material, and that blaming Timmons's counsel for failing to interview K.C. is inconsistent with his prior argument acknowledging that the private investigator interviewed K.C. Id. at 36.

Timmons objects. Timmons argues again that his counsel failed to conduct any investigation. Doc. 26 at 28. Timmons further rebukes Judge Moreno's analysis of Officer Brill's testimony about observing K.C.'s bruises on her neck and recycles an earlier objection including the failure to call the investigator as a witness. Id.

Timmons's objections are overruled. The materials Timmons's counsel supposedly failed to request were disclosed to counsel as a part of pretrial discovery. Doc. 18 at 36. "Under Brady, '[t]he government has an obligation to disclose evidence that is favorable to the accused and material to either guilt or punishment.' Evidence favorable to the defendant includes not only exculpatory evidence but also evidence that tends to impeach government witnesses." United States v. Baez, 983 F.3d 1029, 1044 (8th Cir. 2020) (alteration in original) (citations omitted). Timmons's counsel was not required to request that which was required to be disclosed. Timmons cannot show that his counsel's performance was deficient in this regard. Further, Timmons cannot on one hand blame his counsel for not interviewing K.C. while acknowledging on the other hand that his counsel had a private investigator interview K.C. Timmons has not shown the state habeas court's dismissal was objectively unreasonable.

### 15. Failure to Object to a Conflict of Interest with the Law Clerk

The trial judge's law clerk[2] had accepted employment with the South Dakota Attorney General's Office appellate division, a fact which was disclosed to both parties prior to trial and

---

[2] The four trial judges within South Dakota's Sixth Judicial Circuit share a single law clerk.

drew no objection from either side. CR at 731–32. Timmons now asserts that his counsel's failure to object amounted to ineffective assistance of counsel. Doc. 2 at 44. Judge Moreno concluded that Timmons could not show prejudice on this ground because the judge, not her law clerk, was responsible for each ruling and the conduct of trial. Doc. 18 at 37.

Timmons argues that he never acquiesced to this. Doc. 26 at 29. Timmons argues that the conflict "looks bad" and cites to Wilson v. Midland County, 116 F.4th 384 (5th Cir. 2024), to claim that it is "utterly bonkers." Id. (citing Wilson, 116 F.4th at 387). Wilson, however, is distinguishable. In Wilson, the law clerk "was working *both* as a Midland County prosecutor and as a law clerk for the Midland County district judges" at the same time. 116 F.4th at 387. Here, there was no overlap in employment by the law clerk. Law clerks commonly secure future employment during their clerkship with firms or government entities that handle cases before judges; the judge then bears the responsibility to screen the law clerk from work on cases involving the future employer or, as here, alert the parties to mitigate any appearance of impropriety and assure that the judge and not the law clerk is the one making the decisions. Wilson, where a law clerk was working simultaneously for both the court and the prosecutor, differs from the situation here. Timmons cannot show prejudice.

### 16. Juror(s) Access to Legal Pad

During a chamber's conference to settle jury instructions, a legal pad was left behind on the prosecutor's table in the courtroom, which also doubled as the jury room, allowing jurors to potentially access it. See CR at 899. Timmons argues that his counsel's failure to object or do anything else regarding this incident amounts to ineffective assistance of counsel. Doc. 2 at 45. Judge Moreno found the state habeas court's decision that the situation did not call for an objection to be reasonable. Doc. 18 at 38. Timmons objects and claims the entire trial was manipulated

27

against him. Doc. 26 at 30. Timmons's argument is purely speculative and does not show how his counsel's performance was deficient, nor how the state habeas court's decision was objectively unreasonable. Timmons's objection is overruled.

### 17. Doctor's Assessment

Timmons argues that his counsel was deficient for failing to introduce the doctor's assessment of K.C. from her visit after the altercation. Doc. 2 at 46. Timmons asserts that the assessment showed the "[d]octor did not find any bruising on K.C.'s neck." Id. Timmons believes that counsel was deficient for failing to introduce this evidence through the nurse, who had "the credentials to give an opinion or explanation of what the [d]octor found." Id. Judge Moreno found the state habeas court's decision that the nurse was not able to be a competent witness to opine about the doctor's assessment was reasonable. Doc. 18 at 39. Judge Moreno concluded, even if the doctor's assessment were introduced, it "is not the wholesale contradiction that Timmons represents." Id.

Timmons objects in four ways. His first objection is to Judge Moreno's noting that the nurse "charted her observations." Doc. 26 at 30 (citing Doc. 18 at 38). Timmons argues that the nurse could not remember seeing bruising, but then was given a document, "what she charted that day," to refresh her recollection. Id. Timmons objects to the finding that the nurse charted her observations but then states that the document contained what she charted that day in the next sentence. Id. This objection is overruled.

Timmons next objects to Judge Moreno's finding that the state habeas court's decision was reasonable that the nurse could not opine about the doctor's assessment. Id. at 31. Timmons argues that his counsel should have asked "when the [d]octor did his assessment [and] why did he chart no bruising on the neck." Id. The first question does Timmons little good as it was already

established that the visit took place the morning after the altercation. CR at 931–32. The second question would have been met with an objection as calling for speculation. Timmons's proposed line of questioning is unavailing and does not show how his counsel's performance was deficient.

Timmons further objects that Judge Moreno's finding that the doctor's assessment "is simply silent on whether bruising is visible" is "merely speculative or a biased guess." Doc. 26 at 31 (citing Doc. 18 at 39). Timmons argues that the assessment does chart bruising on her upper arms, which to Timmons, means there was no bruising on her neck. Timmons also objects to Judge Moreno's finding that the assessment logged K.C. feeling "[m]ild diffuse pain" in her neck. Id. (alteration in original) (citing Doc. 18 at 39). Timmons argues that "feeling mild pain is not physical evidence that [K.C.] was choked or strangled." Id. Here, Timmons is simply arguing what he hopes the evidence might have been. Timmons does not, however, contend that his counsel's performance was deficient with either of these objections. Timmons's objections are overruled.

### 18. Domestic Violence Expert

Timmons alleges multiple failures by his counsel during the State's domestic violence expert's testimony. See Doc. 2 at 47–49. Timmons notes the absence of any pretrial Daubert hearing. Id. at 47. Timmons argues that counsel should have objected to the introduction of the "Duluth Model" and the "Power and Control Wheel." Id. Timmons also criticizes his counsel's failure to object to the State using the term "victim" during its direct examination of the expert witness and that his counsel was "perhaps maybe" sleeping. Id. at 48–49. Judge Moreno found that Timmons could not show deficient performance because Timmons's counsel did object to the

introduction of the "Duluth Model" and the "Power and Control Wheel,"[3] and Timmons could not show how he was prejudiced by the State's one-time use of the word victim or counsel's alleged drowsiness. Doc. 18 at 40–41.

Timmons objects to Judge Moreno's finding that the use of the term "victim" was not prejudicial. Doc. 26 at 32. Timmons argues that the jury likely gave this testimony "serious weight" because she was an expert. Id. Timmons also argues that the expert witness's testimony was argumentative and violated his presumption of innocence. Id.

Timmons's objections are overruled. As another district court has found:

> [C]ounsel's performance was not deficient as the use of the [term] "victim" did not cause prejudice sufficient to undermine confidence in the result of the proceeding as the "term 'victim' is relatively mild and non-prejudicial especially given that courts have held invocation of far stronger terms did not result to reversible error."

Cueva v. Stephens, No. 14-CV-417, 2016 WL 4014088, at *9 (S.D. Tex. Feb. 19, 2016) (citation omitted). See also Kidd v. Reilly, No. 11-cv-350, 2012 WL 5874321, at *8 (D.N.H. Oct. 15, 2012). Timmons cannot show the one-time use of the word "victim" caused enough prejudice to warrant habeas relief.

### 19. Discovered Transcript

Timmons argues that his counsel's failure to object to juror access during deliberations to a transcript of one of the video recordings presented by the State amounted to ineffective assistance of counsel. Doc. 2 at 49–50. Judge Moreno found that jurors having access to this transcript could not have prejudiced Timmons because the jury could rewatch the videos. Doc. 18 at 42. Timmons objects that only one transcript made its way into the jury room, but he does not demonstrate how

---

[3] The Eighth Circuit has found admission of such testimony not to be reversible error. United States v. Johnson, 860 F.3d 1133, 1138–41 (8th Cir. 2017) (holding trial court did not abuse its discretion in allowing expert witness to testify about the "Duluth Model" and the "power-and-control wheel").

this prejudiced him. See Doc. 26 at 33. Since Timmons concedes that he cannot show prejudice, his objection is overruled. The state habeas court's determination was reasonable.

### 20. The Cumulative Effect of Counsel's Failures

Lastly, Timmons contends that the cumulative effect of counsel's failures amounted to ineffective assistance of counsel. Doc. 2 at 50–51. Judge Moreno found this argument to be barred by Eighth Circuit precedent. Doc. 18 at 42. Timmons objects to this analysis. Doc. 26 at 33. The Eighth Circuit, however, has stated "[h]abeas relief will not be granted based on the cumulative effect of attorney errors." McLaughlin v. Precythe, 9 F.4th 819, 830–31 (8th Cir. 2021) (alteration in original) (quoting Shelton v. Mapes, 821 F.3d 941, 951 (8th Cir. 2016)). See also Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation."); United States v. Stewart, 20 F.3d 911, 917–18 (8th Cir. 1994). Being bound to this long line of precedent, Timmons's objections are overruled, and this theory cannot be considered.

### E. Certificate of Appealability (COA)

A prisoner needs a COA to appeal a final order denying a § 2254 petition. 28 U.S.C. § 2253(c). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). A COA is claim specific, meaning that each claim individually must meet the substantial showing standard. See id. § 2253(c)(3) ("The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2)."). To meet this standard, the "petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (cleaned up and citation

omitted). Because reasonable jurists would not find this Court's rejection of Timmons's claims wrong or debatable, this Court will not issue a certificate of appealability.

## IV. Conclusion

For the reasons stated above, it is

ORDERED that Timmons's Objections, Docs. 24, 26, to the Report and Recommendation are overruled. It is further

ORDERED that the Report and Recommendation, Doc. 18, is adopted and that Respondents' Motion for Judgment on the Pleadings, Doc. 11, is granted.

DATED this **30**ᵗʰ day of September, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE